DISTRICT OF OREGON
**F I L E D**
May 06, 2014
**Clerk, U.S. Bankruptcy Court**

Below is an Opinion of the Court.

RANDALL L. DUNN
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: ) | Bankruptcy Case |
| ) | No. 14-30394-rld11 |
| BAY CLUB PARTNERS-472,LLC, ) | |
| ) | MEMORANDUM OPINION |
| Debtor. ) | |

On March 6, 2014, secured creditor Legg Mason Real Estate CDO I, Ltd. ("Legg Mason") filed a motion to dismiss, Docket No. 59 ("Motion to Dismiss"), the debtor Bay Club Partners-472, LLC's ("Bay Club") chapter 11 case for cause pursuant to § 1112(b).[1]  Legg Mason argued that Bay Club's LLC operating agreement prohibited it from filing for bankruptcy protection, and Bay Club's Manager further was not authorized to file for bankruptcy protection without the affirmative votes of 100% of the LLC members.  Trail Ranch Partners, LLC ("Trail Ranch"), a 20% member owner in Bay Club, joined in the Motion to Dismiss, Docket No. 62.

---

[1] Unless otherwise indicated, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532; all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037; and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Page 1 - MEMORANDUM OPINION

Trail Ranch's joinder initially was filed by Mr. Leonard Brown, its Managing Member ("Mr. Brown"), but ultimately, Trail Ranch filed a joinder motion by counsel, Docket No. 130. Bay Club filed an opposition to the Motion to Dismiss, Docket No. 127.

I held the final evidentiary hearing ("Hearing") on the Motion to Dismiss on April 23, 2014. After admitting exhibits and hearing testimony and argument, I took the matter under submission. Since the Hearing, I have reviewed the Motion to Dismiss and all supporting and opposing documents. I further have reviewed all admitted exhibits and my notes from the hearing. I have considered carefully the evidence and arguments presented. I also have taken judicial notice of all relevant entries on the docket of Bay Club's chapter 11 case for the purpose of ascertaining facts not reasonably in dispute. Federal Rule of Evidence 201; In re Butts, 350 B.R. 12, 14 n.1 (Bankr. E.D. Pa. 2006). In addition I have reviewed relevant legal authorities, both as cited to me by the parties and as located through my own research.

Based on that consideration and review, I will deny the Motion to Dismiss for the reasons stated in this Memorandum Opinion. Following are my findings of fact and conclusions of law under Civil Rule 52(a), applicable with respect to this contested matter under Rules 7052 and 9014.

I. Relevant Facts

Bay Club was formed as an Oregon limited liability company in 2005 to acquire, renovate and operate a large apartment complex in Mesa, Arizona (the "Property"). On or about November 15, 2005, Legg Mason's predecessor in interest loaned Bay Club $23,600,000 (the "Loan"),

evidenced by a promissory note ("Note"), to acquire the Property. Repayment of the Loan is secured by a deed of trust on the Property.

The Loan terms were modified four times, ultimately resulting in the principal balance of the Note being increased to $24,000,000 and the maturity date being extended to March 1, 2014. However, by early 2014, negotiations for further forebearance and modifications with respect to the Loan between Bay Club and Legg Mason apparently broke down. On January 17, 2014, Bay Club received a notice of default on the Loan obligation from Legg Mason, and Legg Mason offset against the Loan debt Bay Club's reserve accounts for taxes, insurance and capital expenses for the Property in an amount totaling $345,006.68. See Disclosure Statement, Docket No. 116, p.12.

Bay Club filed its chapter 11 petition on January 28, 2014. The petition was signed by Mr. David Butler ("Mr. Butler") on behalf of Bay Club Management, LLC as Bay Club's Manager. See Exhibit E, p.3. A Written Consent and Resolutions of Bay Club members ("Consent Resolution"), dated January 21, 2014, was prepared to document authorization of Bay Club's chapter 11 filing. See Exhibit 8. The Consent Resolution was signed in behalf of three of Bay Club's four members, representing 80% of Bay Club's member ownership interests. However, the evidentiary record is clear that no representative of Trail Ranch signed the Consent Resolution, even though Mr. Brown was repeatedly asked to do so. In fact, Trail Ranch opposed Bay Club's bankruptcy filing. See Exhibit 7.

Oregon limited liability companies ("LLC's") are governed by Oregon Revised Statutes ("ORS") Chapter 63. ORS § 63.130 recognizes two

Page 3 - MEMORANDUM OPINION

Case 14-30394-rld11    Doc 141    Filed 05/06/14

types of management arrangements for LLC's: 1) management by the members (ORS § 63.130(1)); and 2) management by a manager (ORS § 63.130(2)).  Bay Club is a manager-managed LLC.  See Exhibit A, p.2, section 4.1.  In a manager-managed LLC, ORS 63.130(2)(b) provides, with exceptions that do not apply in the circumstances before me, that "any matter relating to the business of the limited liability company may be exclusively decided by the manager . . . ."

Bay Club has a Limited Liability Company Operating Agreement ("Operating Agreement") that provides for the management of its business affairs, as authorized by ORS § 63.057.  See Exhibits A and 2.  Under Section 4.1 of the Operating Agreement, entitled "Management," the Manager

> shall have the sole and exclusive authority to manage the Company and to make any contracts, enter into any transactions, and make and obtain any commitments on behalf of the Company to conduct or further the Company's business.  The affirmative consent (regardless of whether written, oral, or by course of conduct) of the Manager shall constitute the sole requisite consent for purposes of any provision of this Agreement or the Act, excepting only the dissolution of the Company which shall require the consent of a majority in interest of the Members.  All other decisions concerning the business affairs of the Company shall be made by the Manager.  The Manager shall have the power to bind the Company as provided in this Article.  The act of the Manager, regardless of whether such action is for the purpose of apparently carrying on in the usual way the business or affairs at the Company, including the exercise of authority indicated in this Article, shall bind the Company and no person dealing with the Company shall have any obligation to inquire into the power or authority of the Manager acting on behalf of the Company. . . .

However, in spite of the breadth of the Manager's authority to manage the business affairs of Bay Club, as set forth in Section 4.1 of the

Page 4 - MEMORANDUM OPINION

Operating Agreement, significant restrictions on Bay Club's business and operating decisions are imposed in Article XI of the Operating Agreement, entitled "Special Purpose Entity Restrictions."

Section 11.1, entitled "Negative Covenants with Respect to Indebtedness, Operations and Fundamental Changes of Company," provides a preamble to specific restrictions and states as follows:

> The Company intends to borrow money with which to acquire the Property, and to pledge the Property and related assets as security therefor. Until such time as the indebtedness secured by that pledge is paid in full, the Company:

Thereafter, Section 11.1.24 of the Operating Agreement sets forth the restrictions of particular relevance to the Motion to Dismiss:

> [Bay Club] shall not institute proceedings to be adjudicated bankrupt or insolvent; or consent to the institution of bankruptcy or insolvency proceedings against it; or file a petition seeking, or consent to, reorganization or relief under any applicable federal or state law relating to bankruptcy; or consent to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of the Company or a substantial part of the Company's property; or make any assignment for the benefit of creditors; or admit in writing its inability to pay its debts generally as they become due; or take any action in furtherance of any such action.

Although representatives of all members of Bay Club at the time signed the Operating Agreement (see Exhibits A and 2, p.17), no testimony or evidence was introduced that the members or their representatives discussed the restrictive provisions of Article XI on or before the date that they signed the Operating Agreement. Mr. Dean Alterman, who served as counsel to Bay Club with respect to its organization and prepared the Operating Agreement, testified that the restrictive provisions of Article XI of the Operating Agreement were included at the request of Legg Mason.

Page 5 - MEMORANDUM OPINION

## II. Standing

At the outset, I need to deal with Bay Club's argument that as a creditor, Legg Mason had no standing to file and prosecute the Motion to Dismiss. Courts around the country are split on the question of whether creditors have standing to challenge a business entity bankruptcy filing on the ground that it was not properly authorized. Section 1109(b) provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, <u>a creditor</u>, an equity security holder, or any indenture trustee, <u>may raise and may appear and be heard on any issue in a case under this chapter</u>." (Emphasis added.)

In spite of the expansive language of § 1109(b), some courts outside of the Ninth Circuit have held that creditors do not have standing to seek dismissal of a business entity's bankruptcy filing, based in part on the pre-Bankruptcy Code decision of the Supreme Court in <u>Royal Indem. Co. v. Am. Bond & Mortg. Co.</u>, 289 U.S. 165, 171 (1933), and the argument from policy that a creditor's motion to dismiss is the product more of self interest than of concern for what would be best for the creditor body as a whole. See, e.g., <u>In re John Hicks Chrysler-Plymouth, Inc.</u>, 152 B.R. 503, 510 (Bankr. E.D. Tenn. 1992); <u>Still v. Fundsnet, Inc. (In re Sw. Equip. Rental)</u>, 152 B.R. 207 (Bankr. E.D. Tenn. 1992); <u>In re Prof'l Success Seminars Int'l, Inc.</u>, 18 B.R. 75 (Bankr. S.D. Fla. 1982).

On the other hand, other courts basically have applied § 1109(b) according to the plain meaning of its terms and have recognized creditor standing to proceed with a motion to dismiss based on improper

Page 6 - MEMORANDUM OPINION

or inadequate authorization for a bankruptcy filing.  See, e.g., <u>In re Orchard at Hansen Park, LLC</u>, 347 B.R. 822 (Bankr. N.D. Tex. 2006); <u>In re A-K Enters., Inc.</u>, 111 B.R. 149 (Bankr. N.D. Ohio 1990); <u>In re Giggles Rest., Inc.</u>, 103 B.R. 549 (Bankr. D.N.J. 1989).

In the Ninth Circuit, <u>Fondiller v. Robertson (In re Fondiller)</u>, 707 F.2d 441, 442 (9th Cir. 1983), states the classic standard as to standing with respect to bankruptcy matters: Only those persons or entities "who are directly and adversely affected pecuniarily" by a bankruptcy proceeding have standing to appear and be heard.

In this case, Legg Mason has a direct pecuniary interest in whether Bay Club can proceed to attempt to confirm a plan in chapter 11. Legg Mason is the primary, if not the only, secured creditor in the case. The total of all other debts, of all types, scheduled by Bay Club is dwarfed by the unpaid Loan debt.  See Summary of Schedules, Docket No. 39.  Bay Club's bankruptcy filing was precipitated by Legg Mason's notice of default and the impending maturity date of the Loan obligation.  In these circumstances, it is no surprise that in its plan of reorganization, Bay Club seeks to lower the interest rate and extend the maturity date of the Loan debt.  See Plan of Reorganization, Docket No. 115, p.8.  Legg Mason has a pecuniary interest that inevitably will be adversely impacted by Bay Club's bankruptcy filing.  In spite of its clear self interest, I conclude that Legg Mason has standing to prosecute the Motion to Dismiss, based on the straightforward provisions of § 1109(b) and the pecuniary interest test of the <u>Fondiller</u> decision.

Even if I did not conclude that Legg Mason had standing, in any event, Trail Ranch has standing to prosecute its "me, too" motion to

Page 7 - MEMORANDUM OPINION

dismiss as a member of Bay Club. Accordingly, I will proceed to consider the merits of the Motion to Dismiss.

### III. Prepetition Waivers of Bankruptcy Protection are Contrary to Public Policy

Much of the parties' argument at the Hearing focused on whether the restrictions in Article XI of the Operating Agreement, particularly the provisions of Section 11.1.24 prohibiting Bay Club from initiating a bankruptcy case, were consistent with Oregon LLC law. However, my ultimate conclusion is that the disposition of this matter is governed by federal law.

The Ninth Circuit has been very clear that a debtor's prepetition waiver of the right to file a bankruptcy case is unenforceable because it is a violation of public policy.

> It is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code. Hayhoe v. Cole, 226 B.R. 647, 651-54 (9th Cir. B.A.P. 1998). This prohibition of prepetiion waiver has to be the law; otherwise, astute creditors would require their debtors to waive.

Bank of China v. Huang (In re Huang), 275 F.3d 1173, 1177 (9th Cir. 2002). Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1026 (9th Cir. 2012) (same); Wank v. Gordon (In re Wank), 505 B.R. 878, 887-88 (9th Cir. BAP 2014).

No evidence or argument was presented to the effect that Legg Mason insisted on a bankruptcy waiver in its Loan agreements. What the evidence established in this case is more cleverly insidious. Legg Mason requested that the bankruptcy waiver of Section 11.1.24 of the Operating Agreement be included with its requests for other restrictive covenants

Page 8 - MEMORANDUM OPINION

in Article XI, and the bankruptcy waiver provision apparently was included in the Operating Agreement without discussion among the members. The purpose of the bankruptcy waiver provision to prevent a bankruptcy filing while any amount was owed on the Loan debt is clear from the provision of Section 11.1 of the Operating Agreement that the restrictive covenants of Article XI would only be effective "[u]ntil such time as the [Loan] indebtedness secured by that pledge is paid in full." That the members of Bay Club signed the Operating Agreement among themselves rather than acquiescing in the bankruptcy waiver provision in a Loan agreement with Legg Mason is a distinction without a meaningful difference. The bankruptcy waiver in Section 11.1.24 of the Operating Agreement is no less the maneuver of an "astute creditor" to preclude Bay Club from availing itself of the protections of the Bankruptcy Code prepetition, and it is unenforceable as such, as a matter of public policy.

### IV. Bay Club's Chapter 11 Filing was Properly Authorized by the Manager

With my conclusion that the bankruptcy waiver provision of Section 11.1.24 of the Operating Agreement is not enforceable, the question as to whether Bay Club's chapter 11 filing was properly authorized refocuses on the authority of its Manager under Section 4.1 of the Operating Agreement.

Section 4.1 authorizes the Manager to take any actions to further Bay Club's business interests, both in and outside of the ordinary course. Bay Club did go to the trouble of trying to obtain agreement of all of its members to its chapter 11 filing and requested

Page 9 - MEMORANDUM OPINION

that they all sign the Consent Resolution.  Trail Ranch refused to sign.

However, I find that Mr. Butler credibly explained that attempting to get all members to sign off on the Consent Resolution was an effort to avoid the costs and difficulties from such proceedings as the Motion to Dismiss.  That effort takes nothing from the Manager's authority to take all actions necessary to further the business interests of Bay Club under Section 4.1 of the Operating Agreement.  I find that the Manager had the authority under Section 4.1 of the Operating Agreement to initiate a chapter 11 case on Bay Club's behalf, and I conclude that Bay Club's bankruptcy filing was properly authorized. Accordingly I will deny the Motion to Dismiss.

Counsel for Bay Club should submit an order denying the Motion to Dismiss for the reasons stated in this Memorandum Opinion within ten days following its entry on the docket.

###

cc:     Bay Club Partners-472, LLC
        Albert N. Kennedy, Esq.
        Carolyn J. Johnsen, Esq.
        Laura J. Walker, Esq.
        U.S. Trustee